**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
JOSEPH A. FERRARA, SR., FRANK H.
FINKEL, MARC HERBST, DENISE
RICHARDSON, ANTHONY D'AQUILA,
THOMAS F. CORBETT, THOMAS
GESUALDI, LOUIS BISIGNANO,
DOMINICK MARROCCO, and ANTHONY
PIROZZI as Trustees and Fiduciaries of the
Local 282 Welfare Trust Fund, the Local 282
Pension Trust Fund, the Local 282 Annuity
Trust Fund, the Local 282 Job Training Trust
Fund, and the Local 282 Vacation and Sick
Leave Trust Fund,

                      Plaintiffs,

                - against -

ALL AMERICAN TRUCKING SERVICES,
INC. doing business as All American Trucking
Inc.,

                     Defendant.
-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

CV 11-1157 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     **PRELIMINARY STATEMENT**

Plaintiffs commenced this action against Defendants All American Trucking Services,

Inc. d/b/a All American Trucking, Inc. ("All American" or "Defendant") seeking to collect

delinquent employee benefit plan contributions owed by Defendant and seeking an audit of the

books and records of Defendant and certain of its affiliates. DE 1. Plaintiff moved for a default

judgment against All American after it failed to answer or otherwise move in response to the

Complaint. DE 3. Judge Spatt entered a default judgment against All American and referred this

matter to me for an inquest to determine and recommend what damages, if any, are appropriate, including attorney's fees. *See* DE 9.

## II. BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for purposes of this default motion. Defendant in this action is in the business of heavy construction and excavation. Plaintiffs are the Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (the "Funds"). The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of § 3(3) and § 3(37) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3) and § 1002(37). Pursuant to the terms of a collective bargaining agreement, namely, the 2005-2008 Nassau/Suffolk Heavy Construction & Excavating and Asphalt Industry Contract (the "CBA") with the Local 282 International Brotherhood of Teamsters union (the "Union"), All American was obligated to make contributions to the Funds on behalf of employees of the Union. The Funds are maintained and governed by the Restated Agreement and Declaration of Trust (the "Trust Agreement") to which All American is bound pursuant to the CBA.[1]

On December 9, 2008, the Funds requested that All American submit to an audit of its books for a period commencing September 1, 2007. Thereafter, additional follow-up requests were made. In one of those communications, the Funds requested that the audit include the books of certain of All American's affiliates, specifically All American Sanitation Inc., All

---

[1] A copy of the Trust Agreement is annexed as Exhibit A to the May 19, 2011 Declaration of Theresa Cody, senior member of the Funds' Collection Department ("Cody Decl.") [DE 4].

American Waste, Inc., BFL Construction, Inc., and ABC Removal, Inc. (the "Affiliated Companies") as All American was required to do under the terms of the Trust Agreement. All American failed to submit sufficient documentation to allow the Fund to perform a complete audit and failed to submit the books and records of the Affiliated Companies. All American also failed to make contributions due to the Fund on behalf of its employees.

### III.  APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *cert. denied*, 506 U.S. 1080 (1993)); *BMG Music v. Pena*, No. 05-CV-2310, 2007 WL 2089367, at *2 (E.D.N.Y. July 19, 2007).

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)). The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159.

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and*

*Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1989). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

## IV.  DAMAGES

Plaintiffs have submitted the following documents in support of their request for an award of damages: (A) the Cody Declaration, to which exhibits are annexed, including the Trust Agreement, the CBA, and other records of the Funds [DE 4]; (B) the May 17, 2011 Declaration of Michael S. Adler, outside counsel for Plaintiffs, to which exhibits are annexed, including his firm's billing records ("Adler Decl.") [DE 5]; and (C) the April 16, 2011 Declaration of Sebastien Hall, an auditor engaged by the Funds ("Hall Decl.") [DE 6];

The Court finds Plaintiffs' submissions to be sufficient evidence to form the basis for an award of damages. Plaintiffs seek an Order requiring All American to submit to an audit of its books and records, as well as the books and records of the Affiliated Companies. Plaintiffs also seek to recover damages in the following amounts: $84,015.68 in unpaid contributions to the Funds; $45,437.66 in interest calculated at a rate of 18% per year for the period of November 1, 2007 through April 7, 2011 as well $41.13 per diem from April 8, 2011 until judgment is entered; $45,437.66 in liquidated damages as well as $41.13 per diem from April 8, 2011 until judgment is entered; $350 in audit fees; $5,025.40 in attorney's fees; and $699.57 for costs and disbursements. *See* Pls.' Mem. [DE 7].

### A.  Audit of All American and Affiliated Companies

Plaintiffs seek an audit of the books and records of All American, as well as the books and records of the Affiliated Companies. They further request an Order compelling Defendant to

pay any delinquencies identified in the audit and any attendant damages. Pls.' Mem. at 11. The requested audit period is September 1, 2007 through June 30, 2008 – the same period for which Plaintiffs seek money damages. *See id.*

Article IX, Section 1(d) of the Trust Agreement provides as follows:

> The Trustees may at any time audit the pertinent books and records of any Employer in connection with the above. Pertinent books and records of an Employer include the books and records of any business which is bound by a collective bargaining agreement with the Union which requires contributions to any of the Funds and any other business entity which is affiliated with such business and which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a group of trades or business "under common control" as that term is used in 29 U.S.C. §1301(b)(1) for withdrawal liability purposes, which includes the Employer.

Trust Agreement at 27-28.

In his Declaration, Sebastien Hall states that based on documentation provided during an audit of All American, Plaintiffs' auditors concluded that the Affiliated Companies shared the same principals as All American and performed driving work which is covered by the CBA. Hall Decl. ¶ 6-7. Although Plaintiffs did not submit the documentation on which this conclusion is based, the statement is made under oath by a person with knowledge. Therefore, the Court finds that there is a sufficient basis for concluding that the Affiliated Companies are "affiliated with" All American and "have employed persons who have performed the same type of work" as All American. The Court further finds that, based on the language of the Trust Agreement and applicable case law, Plaintiffs are entitled to an audit. *See, e.g.*, *Empire State Carpenters Welfare v. M.V.M. Contracting Corp.*, No. CV 10-1801, 2011 WL 887726, at *2 (E.D.N.Y. Jan. 31, 2011) (recommending that the default judgment "include an order directing defendant to permit

5

and cooperate in an audit of its books and records"); *Trustees of the Local 7 Tile Ind. Welfare Fund v. Exceptional Flooring, Inc.*, No. 10 CV 1883, 2011 WL 3625335, at *2 (E.D.N.Y. June 30, 2011) (finding in the context of a default judgment that "plaintiffs are entitled to audit defendants' books and records" pursuant to the collective bargaining agreement).

The Court respectfully recommends that Judge Spatt order All American and the Affiliated Companies to submit to an immediate audit of their books and records. If All American and the Affiliated Companies fail to submit to an audit within the time period prescribed by Judge Spatt, then the Court recommends that Plaintiffs be awarded monetary damages as discussed below. *See Ferrara v. Stallone Testing Labs., Inc.*, No. 10-CV-901, 2011 WL 3847123, at *5 (E.D.N.Y. Aug. 5, 2011); *Gesualdi v. Giacomelli Tile Inc.*, No. 10-CV-4841, 2011 WL 4352548, at *2 (E.D.N.Y. Aug. 18, 2011).

### B. Monetary Damages

#### 1. *Estimated Unpaid Contributions*

Plaintiffs seek to recover unpaid benefits earned for the period September 1, 2007 through June 30, 2008 in the amount of $84,015.68.

Pursuant to Article IX, Section 1(d) of the Trust Agreement, Defendant was required to submit to periodic audits of its books and records in connection with its contributions to the Funds. Trust Agreement at 27. Once the Defendant failed to submit sufficient records to enable the Funds to perform an audit, the Funds were permitted to estimate the amount of contributions owed based on one of two formulas provided in the Trust Agreement, depending on whether or not the employer submitted remittance reports for the period sought to be audited. *See* Trust Agreement at 27-28. Specifically, where All American submitted remittance reports for a given

6

month but failed to permit an audit, Article IX, Section 1(f) of the Trust Agreement provides that estimated additional contributions are computed by taking fifty percent (50%) of the number of hours reported by the employer for that month and multiplying that figure by the current contribution rate. *Id.* at 29. For months during which the employer fails to submit remittance reports, Article IX, Section 1(e) provides that the estimated contribution is determined by adding 10% to the number of hours for the month in which the greatest number of hours were reported in the previous twelve remittance reports and multiplying that figure by the current contribution rate. *Id.* at 28.

All American submitted remittance reports for September, October, and December of 2007 and January, February, March, and April of 2008. Cody Decl. ¶ 23, Ex. C. All American did not submit remittance reports for November 2007, May 2008 or June 2008. *Id*. ¶ 25. Pursuant to the CBA, the contribution rates an employer must pay for each hour worked by its covered employees to each Fund are as follows: (1) Welfare Fund, $9.20; (2) Pension Fund, $7.00; (3) Annuity Fund, $8.0025; (4) Job Training Fund, $.15; Vacation and Sick Leave Fund, $2.70. CBA at 17-19. Using these rates, the Funds conducted their own audit of the September 2007 through June 2008 period in accordance with the estimate provisions in the Trust Agreement and concluded that Defendant owed the Funds $84,015.68 in contributions. Cody Decl. ¶¶ 27-31, Ex. D.

After a review of the CBA, the Trust Agreement, the remittance reports submitted by Defendants and the audit conducted by Plaintiffs, the Court finds $84,015.68 to be an accurate amount. The remittance reports for the Welfare, Pension, and Job Training Funds reflect the following hours: September 2007, 696 hours; October 2007, 476 hours; and December 2007

through April 2008, 0 hours.[2] Thus, after applying the additional 50% premium to the total hours, pursuant to Article IX, Section 1(f) of the Trust Agreement, the hours to be applied for the months where remittance reports were actually submitted are as follows: September 2007, 1,044 hours; October 2007, 714 hours; December 2007 through April 2008, 0 hours. For the months when no remittance reports were submitted (November 2007 and May and June 2008) pursuant to the Trust Agreement, the highest hours found in the prior twelve remittance reports – here 696 hours for September 2007, *see id*. ¶ 30 – is applied, plus an additional 10%, yielding 765.60 hours per month. Adding all hours together for the ten months at issue results in a total of 2,882.80 hours for each of the Welfare, Pension and Job Training Funds.

The remittance reports for the Annuity Fund reflect the following hours: September 2007, 862 hours; October 2007, 540 hours; and December 2007 through April 2008, 0 hours. Thus, after applying the additional 50% premium to the total hours, pursuant to the Trust Agreement, the hours to be applied for the months where remittance reports were submitted are as follows: September 2007, 1,293 hours; October 2007, 810 hours; December 2007 through April 2008, 0 hours. For the months when no remittance reports were submitted (November 2007 and May and June 2008) pursuant to the Trust Agreement, the highest hours found in the prior twelve remittance reports – here 862 hours for September 2007, *see id*. ¶ 30 – is applied, plus an additional 10%, yielding 948.20 hours per month. Adding all hours together for the ten months at issue results in a total of 3,545.60 hours for the Annuity Fund.

---

[2] The Court assumes that the hours reported for the various Funds differ because only hours worked up to forty (40) hours per week count toward the Welfare, Pension and Job Training Funds. This limitation is not applicable to the Vacation Fund; however, the Vacation Fund excludes paid holidays. Neither of the foregoing limitations apply to the hours that count toward the Annuity Fund. *See* CBA at 17-18.

The remittance reports for the Vacation Fund, reflect the following hours: September 2007, 764 hours; October 2007, 496 hours; and December 2007 through April 2008, 0 hours. Thus, after applying the additional 50% premium to the total hours, pursuant to the Trust Agreement, the hours to be applied for the months where remittance reports were submitted are as follows: September 2007, 1146 hours; October 2007, 744 hours; December 2007 through April 2008, 0 hours. For the months when no remittance reports were submitted (November 2007 and May and June 2008) pursuant to the Trust Agreement, the highest hours found in the prior twelve remittance reports – here, 764 hours for September 2007, *see id*. ¶ 30 – is applied plus an additional 10%, yielding 840.40 hours per month. Adding all hours together for the ten months at issue results in a total of 3,151.20 hours for the Vacation Fund.

Taking the total hours for each Fund and multiplying that figure by the per hour contribution rates for each Fund yields the following amounts of unpaid contributions: (1) $26,521.76 for the Welfare Trust Fund (2,882.8 x $9.20); (2) $20,179.60 for the Pension Trust Fund (2,882.8 x $7.00); (3) $28,373.66 for the Annuity Trust Fund (3,545.6 x $8.0025; (4) $432.42 for the Job Training Trust Fund (2,882.8 x $.15); and (5) $8,508.24 for the Vacation and Sick Leave Trust Fund (3,151.2 x $2.70), for a grand total of $84,015.68. Accordingly, this Court finds that the Plaintiffs are entitled to the sum of $84,015.68 for unpaid contributions.

### 2. *Interest on Unpaid Benefit Contributions*

Under ERISA, the Funds are also entitled to recover interest on the unpaid fringe benefits at "the rate provided under the plan, or if none, 'the rate prescribed under section 6621 of Title 26.'" *Cement & Concrete Workers Dist. Council Welfare Fund,* 06-CV-2953, 2007 WL 2712314, at *3, n.4 (E.D.N.Y. Sept. 13, 2007) (quoting 29 U.S.C. § 1132(g)(2)).

Plaintiffs assert that the Trust Agreement provides for interest at the rate of 1.5% per month, or 18% per year on the delinquent contributions. *See* Cody Decl. ¶¶ 35-36. Plaintiffs' assertion is confirmed by an Amendment to Article IX, Section 3 of the Trust Agreement which states that the interest rate is 1.5% per month. *See* Trust Agreement, tenth unnumbered page after page 51. Based on this interest rate, Plaintiffs allege that the total amount of interest due from the first day of the month in which contributions were due (November 1, 2007 for contributions due in September 2007) through April 7, 2011 is $45,437.66. *See* Pls.' Mem. at 7-8.

Contributions are due on the 30th day of each month for all payroll periods during the preceding calendar month. *See* Trust Agreement at 27. Contributions are considered late if they are not paid by the first day of the month following the month in which they are due. Cody Decl. ¶ 38; Trust Agreement at 30. Thus, interest began accruing for the delinquent September 2007 contributions on November 1, 2007. Plaintiffs calculated interest by taking 18% of the contributions due for the period at issue, dividing that by 365 to determine the daily interest rate, and then multiplying that rate by the number of days between November 1, 2007 and April 7, 2011. Plaintiffs submit an in-depth interest worksheet that clearly computes the interest owed on the $84,015.68 in unpaid contributions for each Fund. The total interest amounts to $45,437.66. *See* Cody. Decl., Ex. D. Those calculations are confirmed by the Court's independent calculations. Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded interest on the unpaid contributions through April 7, 2011 in the amount of $45,437.66.

Although Plaintiffs only calculated interest up until April 7, 2011, according to the Trust Agreement, daily interest continues to accrue until payment is made. *See* Cody Decl. ¶ 37; Trust

Agreement at 30. Plaintiffs have calculated the daily interest for the unpaid contributions owed to each fund to be $41.43 per diem. *See* Adler Decl., Ex. E. The Court finds these calculations to be accurate and therefore recommends that Plaintiffs be awarded additional interest in the amount of $41.43 per diem from April 8, 2011 until judgment is entered.

### 3. *Liquidated Damages*

Plaintiffs also seek an award of liquidated damages as contemplated by the Trust Agreement and pursuant to the applicable provisions of the ERISA statute. *See* Pls.' Mem. at 8. In accordance with 29 U.S.C. § 1132(g)(2) and Article IX, Section 3(d) of the Trust Agreement, the Defendant is required to pay additional liquidated damages in an amount equal to the greater of (i) the amount of interest on the unpaid contributions or (ii) 20% of the unpaid contributions. Since 20% of the contribution deficiency ($84,015.68) is $16,803.14 while the interest owed to Defendant is at least $45,437.66, the greater amount is the interest on the unpaid contributions. Plaintiffs also argue that liquidated damages continue to accrue at a daily rate of $41.43. *See* Pls.' Mem. at 8. This is consistent with the Trust Agreement which provides that interest continues to accrue at the daily rate, as well as the applicable law in this District. *See La Barbera v. Les Sub-Surface Plumbing, Inc.,* No. 06-CV-3343, 2008 WL 906695, at *7 (E.D.N.Y. Apr. 3, 2008). Therefore, I respectfully recommend to Judge Spatt that Plaintiffs be awarded liquidated damages equivalent to the amount of interest on the unpaid contributions in this action, which is $45,437.66, along with $41.43 per diem from April 8, 2011 until judgment is entered.

### 4. Fees and Costs

#### a. Audit Costs

Plaintiffs request damages of $350 for audit fees incurred. *See* Pls.' Mem. at 8. While ERISA does not specifically mention the recovery of auditor fees, it does allow for such other legal or equitable relief as the court deems appropriate and courts in this District have interpreted this provision to include audit fees. *See* 29 U.S.C. § 1132(g)(2)(E); *La Barbera v. Tadco Const. Corp.*, 647 F. Supp. 2d 247, 254 (E.D.N.Y. 2009) (awarding audit costs under similar Trust Agreement provision at issue here); *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp.,* No. 08-CV-116, 2009 WL 2461738, at *4 (E.D.N.Y. Aug. 11, 2009) (holding that "ERISA allows for the recoupment of such [audit] costs"). In fact, Article IX, Section 3(b)(2) of the Trust Agreement specifically allows for the recovery of $350 in auditor's fees where, as here, the collection of delinquent contributions is referred to the Fund's attorney. *See* Trust Agreement at 30-31. Thus, I respectfully recommend to Judge Spatt that Plaintiffs be awarded $350 in audit costs.

#### b. Attorney's Fees

Plaintiffs seek to recover attorneys' fees in the amount of $5,025.40.[3] Pls.' Mem. at 9. Attorney's fees are recoverable damages pursuant to 29 U.S.C. § 1132(g)(2)(D) and Article IX, Section 3(a) of the Trust Agreement. Courts within the Second Circuit determine appropriate attorney's fees according to a standard of a "presumptively reasonable fee." *See Simmons v. New*

---

[3] Apparently, between March 1, 2009 and February 28, 2010, the Plaintiffs and their outside counsel, Cohen, Weiss and Simon LLP, agreed to a 10% reduction in legal fees that is not reflected in the bills submitted. *See* Adler Decl. ¶ 9. Although counsel's bills reflect attorney's fees of $1,796.00, they request attorneys' fees of $1,616.40 which takes into account the agreed upon discount. *Id.*

*York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 190 (2d Cir. 2008). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184.

The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Comm'n Services, Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing [market rates] in the community for similar

services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). In order to apply out-of-district rates, a party must overcome a presumption in favor of the forum rule. *See Simmons v. New York City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2007). To overcome the presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons,* 575 F.3d at 172. The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)[4] and remain mindful that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

In 2011, the Second Circuit affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. *Konits v. Karahalis*, No. 10-CV-2157, 2011 WL 310318, 409 Fed. Appx. 418, 422-23 (2d Cir. 2011). Similarly, another court has observed that "reasonable fees in this district vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates" and $70 to $80 for paralegals or legal assistants. *Penberg v. HealthBridge Mgmt.*, No.

---

[4] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19.

08-CV-1534, 2011 WL 1100103, at *6-7 (E.D.N.Y. March 22, 2011). Plaintiffs also cite cases in which courts in this district have approved paralegal rates of $90 per hour. *See* Pls.' Mem. at 9-10 (citing *Ferrara v. K&W Logistics LLC*, No. 09-CV-3412, Order Adopting R&R In Part & Modifying In Part (E.D.N.Y. Sept. 30, 2010); *Finkel v. Architcraft Inc.*, No. 08-CV-4597, 2010 WL 1257773, at *4 (E.D.N.Y. Feb. 24, 2010)); *accord Ferrara v. All-Around Trucking Inc.*, No. 10-CV-5845, 2011 WL 6026300, at *6 (E.D.N.Y. Nov. 8, 2011) *adopted by* 2011 WL 6026294 (Dec. 2, 2011).

To determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation. . . ." *Cho v. Koam Medical Servs. P.C.*, 524 F. Supp. 2d 202, 209 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted).

Counsel for Plaintiffs charged: (1) $370 per hour for time billed by partners Elizabeth O'Leary and Peter Herman; (2) $275 per hour for time billed by associate Michael S. Adler; and (3) $90 per hour for time billed by paralegal David Ward. *See* Adler Decl. ¶ 11. Plaintiffs argue

15

that these billing rates are in line with or less than those charged by other firms performing similar work within the Eastern and Southern Districts of New York. *See* Pls.' Mem. at 9. Regarding the Southern District cases alluded to, the Court notes that Plaintiffs have not provided the Court with any factual information specific to the circumstances of this case which would warrant the Court's applying a rate other than the prevailing Eastern District rates. Nevertheless, the rates charged by counsel are in line with rates recently approved in this District and the Court therefore finds them appropriate.

Plaintiffs' counsel also provided the Court with the firm's time records which capture all time billed to this matter from September 18, 2009 through April 28, 2011. *See* Adler Decl., Ex. C. The time records describe what tasks were performed on behalf of Plaintiffs in connection with the case and by whom, along with the dates on which such tasks were performed and the amount of time expended. *Id.* In total, Partner Herman billed .4 hours, Partner O'Leary billed .1 hours; Associate Adler billed 15.8 hours; and Paralegal Ward billed 7.5 hours. *Id.* ¶ 11, Ex. C. After a review of the invoices submitted by Plaintiffs' counsel, the Court does not find any unreasonable, excessive or unnecessary time that should be excluded. Accordingly, the Court finds that all 23.8 hours expended by Plaintiffs' counsel are properly included in calculating the attorney's fee award.

Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded attorney's fees in the total amount of $5,205.40.

### c. Costs

Finally, Plaintiffs seek costs and disbursements in the amount of $699.57. Pls.' Mem. at 10. ERISA allows for the recovery of reasonable costs. *See* 29 U.S.C. § 1132(g)(2)(D). Courts

typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reidman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987). The costs incurred by Plaintiffs include telephone calls, research, ground transportation to Court via subway for filing, photocopying, postage, process service fees and filing fees. *See* Adler Decl. ¶¶ 15-25. These expenses all serve as a proper basis for reimbursement. *See LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir. 1998) (finding that expenses such as "duplicating, postage, telephone, computerized legal research and other office expenses" are expenses that are ordinarily recoverable); *Field Day, LLC v. County of Suffolk*, No. 04-CV-2202, 2010 WL 5491025, at *8 (E.D.N.Y. Sept. 9, 2010). Accordingly, I respectfully recommend to Judge Spatt that Plaintiffs be awarded costs in the amount of $699.57.

## V. CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Spatt that an order be issued requiring All American and the Affiliated Companies to submit to an immediate audit of their books and records for the period September 1, 2007 through June 30, 2008. If All American and the Affiliated Companies fail to submit to an audit within the time period prescribed by Judge Spatt, then it is recommended that Plaintiffs be awarded damages as follows: (i) $84,015.68 for unpaid benefit contributions; (ii) interest on the delinquent benefit contributions in the amount of $45,437.66 plus $41.43 per diem from April 8, 2011 until the date judgment is entered; (iii) liquidated damages in the amount of $45,437.66 plus $41.43 per diem from April 8, 2011 until the date judgment is entered; (iv) $350 in audit fees; and (v) $5,205.40 in attorney's fees and $699.57 in costs. Plaintiffs are also entitled to post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the

Board of Governors of the Federal Reserve System for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Arthur D. Spatt, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 188 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for the Plaintiffs is directed to serve a copy of this Report and Recommendation on the Defendant forthwith and to file proof of service on ECF.**

                          **SO ORDERED.**

Dated: Central Islip, New York
       February 17, 2012

                          /s/ A. Kathleen Tomlinson
                          A. KATHLEEN TOMLINSON
                          U.S. Magistrate Judge